IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER R. BENSON, | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BUDGET RENT A CAR SYSTEM | : | |
| INC. and JNR ADJUSTMENT | : | |
| COMPANY, INC., | : | No. 08-cv-4512 |
| Defendants | : | |

**M E M O R A N D U M**

**Stengel, J.**                                                                                                **September 29, 2011**

Peter Benson brings this action against Budget Rent A Car, an American car rental company. Benson claims Budget Rent A Car violated the Pennsylvania Fair Credit Uniformity Act, 73 Pa.C.S. § 2270.2 et. seq. and seeks declaratory and injunctive relief.[1] The complaint alleges that Budget Rent A Car overbills customers in Pennsylvania for damage to rental cars. Budget Rent A Car filed a motion for summary judgment as to these claims. For the following reasons, I will grant in part and deny in part the Defendant's motion.

I.   BACKGROUND

Peter Benson entered into a written contract with Budget Rent A Car, Inc. for the rental of a Budget vehicle. Mr. Benson did not purchase the loss damage waiver (LDW) coverage for the rental vehicle. See Plaintiff's Response to Defendant's Motion for

---

[1] Benson v. Budget Rent A Car, Inc., No. 08-4512 (E.D. Pa. filed September 16, 2008).

1

Summary Judgment at 2. He believed any loss would be covered by his automobile insurance and his credit card insurance. Id.

The rental document[2] signed by Mr. Benson provides:

> Before purchasing LDW, renter should check if own insurance covers damage to and loss of the car, the limit of coverage and deductible. If the renter declines LDW, renter may be liable for up to the retail fair market value (less salvage) of the car, regardless of fault, unless ordinary negligence is excluded by law. Repairs are at Budget's cost. Read LDW terms on the rental document jacket terms and conditions, including exclusions from LDW.

See Plaintiff's Statement of Additional Facts at 1; Defendant's Response to Plaintiff's Additional Statement of Facts at 10. The rental jacket terms and conditions state:

> If you do not accept LDW, or if the car is lost or damaged as direct or indirect result of violation of paragraph 14, you are responsible; and you will pay us for all loss of or damage to the car regardless of cause, or who, or what caused it. If the car is damaged, you will pay our estimated repair cost, or if, in our sole discretion, we determine to sell the car in its damaged condition, you will pay the difference between the car's retail fair market value before it was damaged and the sale proceeds . . . . As part of our loss, you'll also pay for loss of use of the car, without regard to our fleet utilization, plus an administrative fee, plus towing and storage charges, if any ("Incidental Loss").

See Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 10. The rental document states:

> By signature, I acknowledge receipt of all notices which appear on this rental document. I agree to the terms and conditions including who may drive the car, which is stated on the rental document jacket provided.

See Plaintiff's Statement of Additional Facts at 3-4. The rental jacket states:

---

[2] Throughout this opinion, I will refer to the document Mr. Benson signed as the "rental document," I will refer to the rental jacket as the "rental jacket," and I will refer to the rental document, rental jacket and return record together as the "rental agreement."

2

> These terms and conditions, the rental document, signed by you, and a return record with computed rental charges together constitute the rental agreement ("agreement") between you and Budget Rent a Car System, Inc. . . . . Further references to the "rental document" alternately mean the front of these terms, if there is no separate rental document.

The rental agreement provides that Budget, at its discretion, can repair the damaged vehicle or sell the vehicle. See Defendant's Brief in Support of Summary Judgment at 3. If it chooses to sell the vehicle, it can charge the customer the retail fair market value of the car prior to the accident less the sales proceeds. Id. The rental agreement also provides that Budget can recover damages for loss of use, towing and storage fees, and administrative fees. Id.

Budget acquires new vehicles through select dealerships in bulk, acquiring upwards of 250,000 vehicles per year. Id. It purchases the vehicles in volume at negotiated prices and receives credits that appear on the invoice. Id. It also receives incentives for purchasing the vehicles that it must apply for from the manufacturers. The amount of the credits and incentives varies depending on the manufacturer, model, trim, time of year, and production capacity. Id.

Budget does not account for each individual car in its general ledger. Id. Much of the information is recorded on a global level across Budget's business. In addition, the cost of a single vehicle does not take into account all expenses incurred by Budget relative to operating its vehicle fleet and its business. Id. Budget's operating expenses include vehicle license and registration fees, advertising expenses, field administration expenses, overhead expenses both at Budget's headquarters and in field operations, and

interest.  See Defendant's Statement of Undisputed Facts in Support of its Motion for Summary Judgment at 6.  In addition, Budget must pay salary and wages to individuals who salvage the damaged vehicles and who purchase the new vehicles.  Id.

Budget salvages as many as 1,300 to 1,800 vehicles per month.  Id.  Budget cannot buy a replacement vehicle at a price equivalent to the retail fair market value of the salvaged vehicle prior to the accident and typically pays a higher price than the retail fair market value of the salvaged vehicle to obtain a replacement vehicle.  Id.  Barring damage to the vehicle, Budget keeps a vehicle for 11 to 12 months before replacing it.  Its typical utilization of its vehicles ranges from 70% to 80%.  Id.

On October 26, 2007, Mr. Benson was involved in an accident that caused damage to a Budget rental vehicle.  Budget's appraiser said the vehicle could be repaired for $5,481.08, but Budget chose to sell the vehicle rather than repair it.  See First Amended Complaint at 3.  Therefore, Budget sought $9,637.80 from Mr. Benson for the damages to the vehicle.  Id.  This amount included $8,954.87, which was the cash value of the vehicle prior to the accident minus the proceeds Budget received from the sale of the vehicle, as well as $106.00 for towing/storage, $426.93 for loss of revenue/use, and $150.00 for appraisal/evaluation/administrative fees.  Id.  Mr. Benson's insurance company paid $5,077.35, which was the amount it had calculated for the cost of repair less the $500 deductible, toward Budget's total.  Id.

II.     STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party" based on the evidence in the record. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" when it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met simply by demonstrating to the district court that "there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" Fed. R. Civ. P. 56(c)(1). Summary judgment is therefore appropriate when the non-moving party fails to rebut by making a factual showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must draw "all justifiable inferences" in favor of the non-moving party. <u>Anderson</u>, 477 U.S. at 255. The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." <u>Id.</u> at 252. If the non-moving party has produced more than a "mere scintilla of evidence" demonstrating a genuine issue of material fact, then the court may not credit the moving party's "version of events against the opponent, even if the quantity of the [moving party's] evidence far outweighs that of its opponent." <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

III.   DISCUSSION

    A.   <u>Incorporation of the Rental Jacket</u>

"[A] contract may incorporate by reference provisions contained in another instrument so long as the incorporated provisions are 'identified beyond all reasonable doubt.'" <u>Advanced Tubular Prods., Inc. v. Solar Atmospheres, Inc.</u>, 2004 WL 540019, at *5 (Mar. 12, 2004) (quoting <u>Standard Bent Glass Corp. v. Glassrobots OY</u>, 333 F.3d 440, 447 n. 10 (3d Cir.2003)). "Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." <u>Standard Bent Glass Corp.</u>, 333 F.3d at 447.

The rental jacket, which Mr. Benson received, references incorporation. The jacket states:

> These terms and conditions, the rental document, signed by you, and a return record with computed rental charges together constitute the rental agreement ("agreement") between you and Budget Rent a Car System, Inc. or the independent Budget System Licensee identified on the rental document ("Budget"). Further references to the "rental document" alternately mean the front of these terms, if there is no separate rental document.

The rental document Mr. Benson signed references the "rental terms and conditions" contained on the rental jacket in three different locations. First, in relation to the loss damage waiver, the rental document states:

> Before purchasing LDW, renter should check if own insurance covers damage to and loss of the car, the limit of coverage and deductible. If the renter declines LDW, renter may be liable for up to the retail fair market value (less salvage) of the car, regardless of fault, unless ordinary negligence is excluded by law. Repairs are at Budget's cost. *Read LDW terms on the rental document jacket terms and conditions, including exclusions from LDW.*

See Plaintiff's Statement of Additional Facts at 1; Defendant's Response to Plaintiff's Additional Statement of Facts at 10. Second, the rental document states: "No additional operators are authorized or permitted without Budget's prior approval *in accordance with the terms and conditions of the rental agreement* or applicable state law." Third, the rental document concludes with:

> By my signature, I acknowledge receipt of all notices which appear on this rental document. *I agree to the terms and conditions including who may drive the car, which is stated in the rental document jacket provided*.

See Plaintiff's Statement of Additional Facts at 3.

There is no genuine issue of material fact that the rental jacket is part of the contract between the parties. The rental document is not artfully worded. The last

paragraph references the terms and conditions on the rental jacket because the heading "rental terms and conditions" is contained only in the rental jacket. See U.S. v. Sunoco, Inc., 637 F.Supp.2d 282, 287 (E.D.Pa. 2009) (stating when a contract is clear, courts should not assume parties were ignorant of the meaning of the language).

Although the reference concludes with the language "including who may drive the car, which is stated in the rental document jacket," the incorporated provisions are "identified beyond all reasonable doubt." Solar Atmospheres, Inc., 2004 WL 540019, at *5. The rental jacket, which Mr. Benson received and read, states the rental jacket, rental document, and return record constitute the entire rental agreement.[3] Additionally, the term "including" should be understood as "including, but not limited to." I will grant the motion for summary judgment as it pertains to the incorporation of the rental jacket because the contract references the rental jacket, the identity of the rental jacket may be ascertained, and incorporation will not result in surprise or hardship. See Standard Bent Glass Corp., 333 F.3d at 447.

    B.    Damages

In Pennsylvania, liquidated damages are defined as "the sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably ensue from the breach, is legally recoverable . . . if the breach occurs." Mattern & Assoc., L.L.C. v. Seidel, 678 F. Supp. 2d 256, 265 (D. Del. 2010) (quoting Pantuso Motors, Inc. v. CoreStates Bank, N.A., 798 A.2d 1277, 1282 (2002)). "Liquidated damages allow

---

[3] See Exhibit C in support of Defendant's Motion for Summary Judgment.

parties to account for situations where uncertainty would prevent or otherwise inhibit the post hoc determination of actual damages." Id. (citing Pantuso Motors, Inc., 798 A.2d at 1282). "To distinguish a provision that serves a compensatory function from an unenforceable penalty, the court must examine 'the intention of the parties, drawn from the words of the whole contract . . . in light of its subject matter and its surroundings,' as well as 'the relation which the sum stipulated bears to the exact injury which may be caused by the [breach] provided against [and] the ease or difficulty of measuring a breach in damages.'" Id. (quoting Holt's Cigar Co. v. 222 Liberty Assoc., 591 A.2d 743 (Pa.Super.1991)). The party asserting that the liquidated damages provision is unreasonable bears the burden of proof.[4]

### 1. The Salvage Formula's Use of a Damaged Car's Retail Value Before an Accident is Valid and Enforceable as a Liquidated Damages Calculation

To determine the cost to the customer for the damaged car, Budget subtracts the amount it received when the car was sold at an auction from the retail fair market value of the car. Mr. Benson argues this formula does not accurately reflect Budget's loss and

---

[4] Mr. Benson maintains Budget bears the burden of proof. However, in First National Bank of Maryland v. Philadelphia National Bank, 1989 WL 79789, at *9 (E.D. Pa. July 10, 1989), the United States District Court for the Eastern District of Pennsylvania examined Pennsylvania case law and found "Pennsylvania no longer presumes that liquidated damages clauses are unreasonable. Rather, a party who has breached a contract and challenges the enforceability of a liquidated damages clause must show that it is unreasonable." Accord Knorr v. PennDOT, 973 A.2d 1061, 1096 (Pa. Cmwlth. Ct. 2009).
    The cases relied on by Mr. Benson do not establish Budget bears the burden of proof. Holt's Cigar Co. v. 222 Liberty Associates, 591 A.2d 743, 748 (Pa. Super. Ct. 1991), did not address the issue of burden of proof, rather the Pennsylvania Superior Court stated "compensation, not punishment, is the guiding rule." Although the court in Robins Motor Transp., Inc. v. Associated Rigging & Hauling Corp., 944 F. Supp. 409, 412 n.2 (E.D. Pa. 1996) stated "the party seeking to enforce a liquidated damages clause has the burden of demonstrating its reasonableness," it cited First National Bank of Maryland, which found the person challenging the provision must prove it is unreasonable.

is an unenforceable penalty because Budget purchases cars at less than the retail fair market value.[5]

Budget argues it is impossible to determine the exact amount of damages it suffers when it salvages a damaged vehicle. See Defendant's Brief in Support of its Motion for Summary Judgment at 11-12. Its records do not calculate the cost of cars on an individual basis and the cost of its cars do not accurately depict Budget's cost to purchase and salvage cars. Id. It does not include the overhead, such as salaries, or the costs to purchase, store, maintain and service the vehicles. Id. Budget cannot replace the damaged cars with used cars; it purchases only new vehicles to replace its cars. Id. at 12. It argues that the cost replacing a damaged vehicle with a new one is over the retail fair market value of the damaged vehicle. Id.

The analysis of the liquidated damages clause is based on "reasonableness." The contract states Budget can recover the retail fair market value less the salvaged value, and Mr. Benson has not established the calculation is an unreasonable estimate of Budget's overall cost to replace the damaged vehicle. Additionally, Budget states that damages would be extremely difficult or impossible to ascertain because they cannot calculate them on an individual car level. Further, Budget claims that purchasing a new vehicle costs them more than the retail value of the damaged vehicle, so the figure is an appropriate measure of damages and not instituted as a penalty. Therefore, I find that

---

[5] Mr. Benson also argues that Budget should have repaired the car, not sold the car for salvage, because the repair costs were less than the costs Budget assessed him. The rental agreement, however, states it is in Budget's sole discretion to repair the car or to sell the car.

there is no genuine issue of material fact as to whether the calculation of fair market value less the salvaging price is reasonable and enforceable.

> 2. There are Genuine Issues of Material Fact as to whether the Loss of Use Formula is an Appropriate Measure of Liquidated Damages

A person "claiming loss of use damages when the property is not repairable must show that the method of acquiring a replacement for the property and the time taken for the replacement were reasonable." Kitner v. Claverack Rural Elec. Co-op, Inc., 478 A.2d 858, 862 (Pa. Super. Ct. 1984) (quoting Reynolds v. Bank of Am. Nat'l Trust and Savings Ass'n, 345 P.2d 926 (Cal. 1959)).

The rental agreement states "you'll also pay for loss of use of the car, without regard to our fleet utilization . . . ." See Plaintiff's Statement of Additional Facts that Require the Denial of Summary Judgment at 4. To determine loss of use damages for salvaged vehicles, Budget determines the number of days prior to replacement by calculating the number of days between the date of the loss and the sale of the damaged vehicle. Id. at 3. The number of days is capped at 30 days. Id. The number of days is multiplied by the rental costs, which then is multiplied by 70%, which reflects Budget's utilization rate.

Mr. Benson argues the formula used by Budget to determine loss of use damages charges customers for time periods after the rental location replaced the damaged car. Mr. Benson argues this is an improper liquidated damages provision. The damaged cars are replaced within one day and the fleet can move between locations, depending on the need. See Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary

11

Judgment at 12. He argues Budget fails to show a causal connection between the breach and the loss. Id. In addition, if the utilization rate is 70% to 80%, that means Budget is never operating at 100% and did not lose business because it lost the use of one car. Id. at 13. Moreover, the contract does not disclose the formula to the consumer. Id.

Budget argues the calculation is a reasonable pre-estimate for Budget's loss of use due to an inability to rent the damaged vehicle. See Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment at 12-13. It argues, although Budget as an enterprise receives new cars every day, this does not mean the damaged car can immediately be replaced. Id. at 13.

Budget correctly argues that merely because the utilization rate for the cars is 70% to 80% does not mean Budget never loses business when one of its cars is damaged. However, Budget does not explain why it must use the time between the accident and when the car is sold at auction, capped at 30 days, to determine the loss of use damages. It is unclear why Budget cannot use the number of days it actually took to find a replacement car, capped at 30 days, or why it could not use the number of days for new cars to arrive on the lot, capped at 30 days.[6] In addition, the contract states the customer may be liable for loss of use damages without regard to fleet utilization. This does not indicate the replacement date will be determined using the date Budget sells the vehicle, rather than the date Budget replaces the vehicle.

---

[6] James Biondo testified that Budget purchases new cars regularly. The cars arrive on lots at different times, depending on the season and demand. However, it was unclear why Budget would be unable to determine when the next group of cars would arrive at a particular location. In addition, Budget sometimes transports cars between different rental locations. If a rental car was moved to help with any business that may have been lost due to a damaged car, it is unclear why Budget would not be able to know when the replacement car arrived.

These possibilities have not been refuted by the defendant, and have created a genuine issue of material fact rendering summary judgment inappropriate.  Therefore, I will deny Defendant's motion for summary judgment as it pertains to the issue of whether the loss of use damages calculation is reasonable or an unenforceable penalty.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Defendant's Motion for Summary Judgment.  An Appropriate Order follows.