### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PETER R. BENSON,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 08-cv-4512** |
| | : | |
| **BUDGET RENT A CAR SYSTEM** | : | |
| **INC., et al.,** | : | |
| **Defendants.** | : | |

===============================================================

| | | |
|---|---|---|
| **ANNE HUMPHREYS,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 10-cv-1302** |
| | : | |
| **BUDGET RENT A CAR SYSTEM** | : | |
| **INC., et al.,** | : | |
| **Defendants.** | : | |

## M E M O R A N D U M

**Stengel, C.J.**                                                              **January 24, 2018**

Peter Benson brings this action against Budget Rent A Car, an American car rental company. Benson claims Budget Rent A Car violated the Pennsylvania Fair Credit Uniformity Act, 73 Pa.C.S. § 2270.2 et. seq. and seeks declaratory and injunctive relief. On April 24, 2017, plaintiff moved to lift the discovery stay and permit class discovery. (Doc. No. 110). Defendant filed opposition on May 22, 2017. (Doc. No. 115.) Before I reach the merits of plaintiff's motion, the protracted procedural history requires a brief discussion.

### A. Procedural History

The initial complaint was filed on September 16, 2008, alleging that Budget Rent A Car overbills customers in Pennsylvania for damage to rental cars. (Doc. No. 1.) On

November 20, 2008, plaintiff filed an amended complaint. (Doc. No. 16.) Discovery

proceeded on both the class action claims and plaintiff's individual claims. On October

15, 2010, prior to any class certification, defendants filed a motion for summary

judgment (Doc. No. 56) and on November 15, 2010 plaintiff filed opposition (Doc. No.

60.).

During this time, Ann Humphreys, represented by the same counsel as Mr.

Benson, filed a putative class action suit that also challenged Budget's method of

calculating damages. Humphreys v. Budget Rent A Car Systam, Inc. et al., 10-cv-1302.

The parties agreed to stay proceedings in the Humphreys matter pending the outcome of

the Benson summary judgment motion.  (10-cv-1302, Doc. No. 16.) The parties also

agreed that the outcome of the Benson summary judgment motion would apply to both

cases.

On September 29, 2011, I issued an Order granting in part and denying in part

Budget's motion. (Doc. No. 70.) I granted summary judgment in favor of Budget on the

reasonableness of using retail fair market value to calculate the pre-damage value of

damaged rental cars, and I denied summary judgment as to Budget's calculation of the

loss of use charges. Benson v. Budget Rent A Car System, Inc., No. 08-4512, 2011 WL

4528334 (E.D.Pa. Sep. 29, 2011).

Plaintiff's counsel disputed that my findings in the Benson summary judgment

decision applied to the Humphreys case. Accordingly, on April 13, 2012, I issued an

order directing the parties to brief the application of the Benson decision to the

Humphreys case as well as a choice of law issue. On April 30, 2012, the plaintiff in

Humphreys filed a motion to amend the complaint along with her response to the April order.[1] On March 4, 2013, I granted the plaintiff's motion to amend the complaint. I found that although both Humphreys and Benson asked the identical question of whether Budget's damages clause was reasonable, Benson would not preclude any arguments that the plaintiff may present. Humphreys, 2013 WL 797439, at *5. This decision was made in order to afford the plaintiff her "day in court," given that there was no record evidence to show that the outcome of the Benson motion for summary judgment would control the outcome in Humphreys. See Id.

Extensive discovery proceeded in both Benson and Humphreys. Plaintiff's counsel subsequently stated their intent to move for class certification in Benson. Following a telephone conference on April 7, 2015, I issued an order staying discovery in Benson pending resolution of class certification in Humphreys. (Doc. No. 97.)

**B. Class Discovery in Humphreys**

During class discovery, a group of Budget's managers worked to identify salvage vehicles from the rental fleet for the time period relevant to the proposed class claims. (Hr'g Tr. 81:2-7, Mar. 30, 2016.) Ultimately, Budget exported this data into a spreadsheet. (Id. at 81:6-15.) The original spreadsheet – provided in class discovery – contained information from over 18,000 claim files. (Id. at 81:20-22.) For purposes of class discovery, the parties agreed that the defendants would produce the entire claims file for a sample set of 500 files. (Id. at 81:20-82:3.) After the parties agreed on a methodology for identifying this subset, 481 claims files were produced. (Id. at 82:12-7.)

---

[1] 10-cv-1302, Doc. Nos. 24 and 25.

The defendants contend that identifying this sample subset was an arduous task, as they were "required to manually review each and every file to determine in the first instance whether it was, in fact, a salvage formula file or not." (Id. at 82:11-24.) According to the defendants, this manual review conducted by a team of three lawyers and eight paralegals, took approximately 865 hours over a period of roughly six months.[2] (Id. at 82:18-23.) Budget contends that there is no automated way to identify which customers were actually charged the salvage formula. (Id. at 84:9-17.) Further, because book value is not maintained in Budget's claims management system and is not a value that is considered as part of the salvage process, it was not necessarily readily available for each of the claim files.[3] (Id. at 85:2-4.) Defense counsel speculates that it could take almost 36,000 hours to complete the review necessary to properly identify all members of the proposed classes and subclasses.

Furthermore, the defendants had to engage in a manual review to determine who actually paid the claim, as Budget's system only records whether a recovery was made. (Id. at 101:23-25;102:1-3.) Neither Budget's systems nor the spreadsheets indicate whether payment was made by the renter, an insurer, a third party, or a credit card company. (Id. at 102:1-2.) Thus, a manual review of each file was necessary to look for

---

[2] This calculation does not include the time spent by Budget's own employees. (Hr'g Tr. 83:23-84:2, Mar. 30, 2016.) The plaintiff, however, argues that this manual review is unnecessary. Instead, she argues that only two to three documents had to be reviewed from each file. (Hr'g Tr. at 16:11-16, May 12, 2016.) Defense counsel concedes that if he only had to review two pages from each file, this review would have taken less time. (Hr'g Tr. 111:11-112:1, Mar. 30, 2016.)
[3] After its review of 481 files, Budget contends that the book value was only available in 384 files. (Hr'g Tr. 85:8-11, Mar. 30, 2016.) Conversely, the retail fair market value was contained in all but three of the 481 claim files that were part of the sample set, as Budget lists a car's retail fair market value on the Vehicle Loss Disclosure form, a form that also lists the dollar amount that was charged to the renter. (Id. at 94:3-5; 94:14-21.)

correspondence and other documentation that would indicate who made the payment.[4]

(Id. at 102:3-73.) Further, the defendants' review of the sample files revealed that there

was no "record in any file of an insurance company or credit card company denying a

claim to Budget on the basis of the timeliness of the notice." (Id. at 104:2-5.) Rather, the

only file that contained such information was the plaintiff's, in which they found the

letter that she sent to Budget indicating that because the claim was submitted to her in an

untimely matter her credit card company was declining coverage. (Id. at 104:5-10.) The

reviewed claims files also did not contain the renters' credit card or insurance agreements

that governed the renters' ability to submit such claims. (Id. at 104:16-24.)

Class discovery closed on July 10, 2015. On July 21, 2016, following an

evidentiary hearing and oral argument, I issued an Order denying class certification

because plaintiff failed to demonstrate the commonality requirement of Rule 23 and

because the proposed nationwide class would not be manageable.[5]

## C. Discussion

Plaintiff now moves to lift the discovery stay in Benson and permit class

discovery. I find that additional class discovery is not warranted. Initially, certification in

Benson is precluded for the same reasons I denied certification in Humphreys:  because

plaintiff failed to demonstrate the commonality requirement of Rule 23. Specifically, in

Humphreys I denied class certification because the plaintiff failed to demonstrate that

---

[4] The defendants submit that should no such evidence be available in the file, they would have to engage in "some investigation beyond the claim files in order to determine whether there was a payment made by an insurance company on behalf of that renter."  (Hr'g Tr. 103:19-22, Mar. 30, 2016.)

[5] On October 3, 2016, the Third Circuit denied plaintiff's petition for leave to appeal pursuant to Fed. R. Civ. P. 23(f). (10-cv-08 Doc. No. 145.)

"the variations in state laws do not present 'insuperable obstacle[s]' to finding common

answers to the questions posed." 2016 WL 3940807 at *11. Plaintiff argues that the

choice of law variations that precluded certification in Humphreys "simply do not exist"

in Benson because the proposed class is defined as "all Pennsylvania consumers, who

received demand letters from [defendants], relating to damage to Budget rental vehicles."

(Doc. No. 115 at 4 (citing Am. Compl. ¶¶ 39, 55, 66.)) I disagree. As defendant aptly

points out, "[t]here is no limitation in Plaintiff's class definitions as to the state in which

the rental (or the property damage) occurred." (Doc. No. 115 at 4.) I would be obliged to

undertake the choice of law analysis[6] numerous times prior to certifying the class, which

defeats the commonality prong of the certification analysis.

What is more, extensive and burdensome discovery has taken place in both

Benson and Humphreys. Budget submits that it produced the following as part of class

discovery in Humphreys:

---

[6] As I explained in my July 21, 2016 Order, the choice of law analysis requires the following:
> To determine which state's law will govern the plaintiff's claims, I will have to engage in
> Pennsylvania's choice-of-law analysis not once but numerous times. The first step of the
> inquiry – determining whether an actual conflict exists – will require me to engage in an
> individualized inquiry for each class member, as I will need to analyze the laws of both
> the rental state and the individual class members' home state, to determine if "there are
> relevant differences between the laws." Hammersmith, 480 F.3d at 23.   If an actual
> conflict exists, then I will need to classify the conflict as "true," "false," or "unprovided-
> for." McDonald v. Whitewater Challengers, Inc., 116 A.3d 99, 107 (Pa. Super. Ct. 2015),
> appeal denied, 130 A.3d 1291 (Pa. 2015). A "true conflict" exists if "the governmental
> interests of both jurisdictions would be impaired if their law were not applied," Garcia v.
> Plaza Oldsmobile, Ltd., 421 F.3d 216, 220 (3d Cir. 2005), while a "false conflict" exists
> when "only one jurisdiction's governmental interests would be impaired by the
> application of the other jurisdiction's law." Lacey v. Cessna Aircraft Co., 932 F.2d 170,
> 187 (3d Cir. 1991). When a false conflict exists, "the court must apply the law of the state
> whose interest would be harmed if its law were not applied." Id. If a true conflict exists,
> then I must proceed to the second step of the choice-of-law analysis. Cipolla v. Shaposka,
> 267 A.2d 854, 586 (Pa. 1970); see also McDonald, 116 A.3d at 107.

[S]preadsheets with claim information from 2008 through 2014 for renters who returned rental cars in damaged condition that were sold for salvage. Budget also produced 481 sample claim files, which were in addition to the files already produced in the Benson case. Budget's counsel estimates that this production took over 1,200 hours of attorney and staff time. Plaintiff took depositions of Budget corporate designees Maureen Byrd and Kyle Jenkins.

Doc. No. 115 at 3. This discovery was in addition to the "thousands of pages of documents" that Budget produced in the Benson case in response to plaintiff's seven sets of interrogatories, four sets of requests for the production of documents, and two sets of requests for admissions. Id. at 1. Plaintiff also deposed two Budget corporate designees, Joseph Diondo and Robert D'Amico, as well as a Budget employee, Maureen Byrd. (Doc. No. 115 at 1-2.) To permit class discovery at this stage in the litigation would result in a fishing expedition that would create an enormous cost to the defendant, and would not change the outcome of plaintiff's proposed class certification.

Therefore, for the reasons discussed above, plaintiff's motion to permit further class discovery is denied.

An appropriate order follows.